UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM JOHN THUN, | ) |
| | ) |
|      Petitioner, | ) |
| | ) |
| v. | ) Civil No. 09-85-P-S |
| | ) |
| STATE OF MAINE, | ) |
| | ) |
|      Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

William Thun brings this 28 U.S.C. § 2254 petition identifying twenty-five points of discontent apropos his conviction in the State of Maine on multiple charges of unlawful sexual contact. The State has responded with a very perfunctory memorandum that basically asks this Court to review the record it has provided of the state court proceedings and conclude that some of Thun's grounds are not exhausted, the resolution of some of his grounds was not contrary to federal constitutional principles, and the remainder of his § 2254 claims are not 28 U.S.C. § 2254 cognizable. After a thorough review of the state court record -- with particular attention to Thun's claims that there was insufficient evidence to convict him and the related confrontation clause challenges -- I recommend that the Court deny Thun 28 U.S.C. § 2254 relief.

*Discussion*

This Court will not grant a petition for habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the Maine court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

1

U.S.C. § 2254(d)(1), (2).  The Maine courts' factual findings "shall be presumed to be correct" and Thun bears the burden of disproving these factual findings by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  See also O'Laughlin v. O'Brien, 568 F.3d 287, 298 (1st Cir. 2009); McCambridge v. Hall, 303 F.3d 24, 34-35 (1st Cir. 2002).

As to Thun's ineffective assistance of counsel claims there is no question that the applicable standard is that set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984) and the cases that have flowed from that decision.  As the First Circuit summarized in Sleeper v. Spencer:

> The Supreme Court has explained that an ineffective assistance of counsel claim requires both deficient performance and prejudice. Strickland, 466 U.S. at 687.
> To establish that counsel's performance was deficient, a defendant must show that it fell below an objective standard of reasonableness under the circumstances. Id. at 687-88. This is a highly deferential review, making every effort to "eliminate the distorting effects of hindsight." Id. at 689.  As the Supreme Court emphasized in Yarborough v. Gentry, the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." 540 U.S. 1, 8 (2003). When examining counsel's conduct, the court considers the facts of the particular case from counsel's perspective at the time. Strickland, 466 U.S. at 690. Counsel has "wide latitude in deciding how best to represent a client," Gentry, 540 U.S. at 5-6, and benefits from a strong presumption that he or she rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions. Strickland, 466 U.S. at 690.
> To establish prejudice, the defendant must show that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. See Wiggins v. Smith, 539 U.S. 510, 537 (2003) (finding prejudice where there was a "reasonable probability that at least one juror would have struck a different balance"); Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

510 F.3d 32, 38 -39 (1st Cir. 2007). Although Thun "must prove both deficient performance and prejudice to prevail on his ineffective assistance of counsel claim, a reviewing court need not address both requirements if the evidence as to either is lacking.  As the Supreme Court has

recognized, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" Id. at 39 (quoting Strickland, 466 U.S. at 697).

The State argues with respect to several of Thun's claims that he has not adequately exhausted them by fairly presenting them to the state courts as required by 28 U.S.C. § 2254(b)(1)(A).  The First Circuit has summarized the § 2254 exhaustion requirement as follows:

> In order to exhaust a claim, the petitioner must "present the federal claim fairly and recognizably" to the state courts, meaning that he "must show that he tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Casella v. Clemons, 207 F.3d 18, 20 (1st Cir.2000) (quoting Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir.1997)). This means that "the legal theory [articulated] in the state and federal courts must be the same." Gagne v. Fair, 835 F.2d 6, 7 (1st Cir.1987). This standard must be met, as a general rule, by "fairly present[ing]" a federal claim "within the four corners of the [post-conviction petition]." Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 823 (1st Cir.1988). We have previously held that a habeas petitioner may accomplish this by doing any of the following: (1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution. Gagne, 835 F.2d at 7. We have also noted that, in some situations, citations to state court decisions which rely on federal law or articulation of a state claim that is, "as a practical matter, [ ] indistinguishable from one arising under federal law," may suffice to satisfy the exhaustion requirement. Nadworny v. Fair, 872 F.2d 1093, 1099-1100 (1st Cir.1989). It is, however, clearly inadequate to simply recite the facts underlying a state claim, where those facts might support either a federal or state claim. Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988).

Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007); see also Baldwin v. Reese, 541 U.S. 27 (2004) (focusing on the "fair presentation" requirement of exhaustion in the context of petitioner's contention that he had exhausted an ineffective assistance of appellate counsel claim).

3

1. <u>Jury Selection: Denial of his right to a fair and impartial jury, counsel's failure to voir dire the jury, new evidence in the transcript of the jury selection, and a challenge to the method used to select jurors</u>

The first four of Thun's habeas claims pertain to jury selection. Thun's opening 28 U.S.C. § 2254 ground is that he was denied his right to a fair and impartial jury because potential jurors were not asked if they had the ability to fairly and impartially decide a case of child sexual abuse. Specifically, Thun insists that they were not questioned about any prior experiences with sexual abuse or asked whether they had been victims of sexual abuse. Thun concedes that he did not raise this issue on direct appeal and relates that he did not know about the issue at the time of his direct appeal. In his second ground Thun raises a claim that counsel was ineffective for failing to voir dire potential jurors, presumably on their prior experiences of sexual abuse. His third claim also relates to jury selection in that he states that the jury selection transcript was not provided in the direct appeal and it would have shown an absence of an impartial jury.[1] Thun's fourth claim is that he was denied his right to a fair and impartial jury because of the method used to conduct jury selection involved picking numbers out of the hat.

The State of Maine asserts that grounds one, three, and four should have been alleged in Thun's direct appeal and were not. (Mot. Dismiss at 10.) It is correct on this point. The fact that Thun did not know of the issue at the time of direct appeal does not excuse his failure to present the claim to the Maine Law Court. It is also clear Thun did not press an ineffective assistance claim pertaining to counsel's failure to voir dire the jury pool in his state post-conviction petition. Under the tutelage of <u>Clements</u> and <u>Reese</u> these claims must be dismissed.

---

[1]      In its motion to dismiss this 28 U.S.C. § 2254 petition the State indicates that it has contacted the Hancock County District Attorney's office and the Superior Court Clerk's office and they have indicated that the jury selection proceeding for Thun's trial has not been transcribed. (Mot. Dismiss at 10 n. 3.) In correspondence filed with this court Thun indicates that he has ordered transcripts from the state courts and has not received all of the ones he wants yet. (<u>See</u> Doc. No. 7.) This letter was docketed May 29, 2009. As of this date Thun has still not provided the court with the additional transcripts.

4

2.   Ineffective assistance of counsel for failing to move to strike a juror

Thun's fifth 28 U.S.C. § 2254 ground is that counsel performed inadequately when he failed to move to strike a juror who admitted reading a newspaper article about Thun in the time between jury selection and the commencement of trial. Thun describes the article as degrading him. Thun concedes that he is not sure what impact this might have had on the jury deliberation but feels that the juror should have been removed 'just to be safe.' Thun states that he raised this ground in his petition for post-conviction review but the judge circumvented it.[2]

Thun raised this claim during his direct examination at the post-conviction hearing. (Post-conviction Hr'g Tr. at 34.) He described the article as a "five-paragraph thing about how bad [Thun was] and [what a] horrible person" he was. (Id. at 34-35.) He stated that his attorney filed a motion prior to trial about this concern of the Bangor jury pool's exposure to the article in the Bangor paper. (Id. at 35.) He related that the judge simply asked the jury pool if anyone heard about it or saw it and one juror said that he had; the juror in question was asked by the judge if he thought it would affect his judgment and the juror answered "No" and "I'll be okay." (Id.) Thun contended during the post-conviction hearing that he thought his attorney should have moved at this juncture to strike this juror. (Id. at 36.) He indicated to the post-conviction court that he was not certain that the juror's exposure to the article had a negative impact on the trial, stating that it could have and he needed everything in his favor. (Id. at 37.)

---

[2]   The State argues that Thun did not fully exhaust this ineffective assistance claim because he did not present it as such to the Maine Law Court in his pro se petition seeking a certificate of probable cause. (See Mot. Dismiss at 2.) In this petition Thun does reference the incident with the jury but he does not frame it as an ineffective assistance claim; instead, he focused on the conduct of the prosecutor and the trial judge. (Pro se Pet. Certificate Probable Cause at 13.) In the interest of thoroughness – 'just to be safe'-- I address the merits because the Superior Court did address the claim and a § 2254 claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(B)(2).

5

The post-conviction court squarely addressed this ineffective assistance claim.  It

explained:

> Petitioner argues that attorney Foster's failure to request that a juror who had read part of a newspaper article about the case be excused constituted ineffective assistance of counsel.
>
> The transcript reflects that on the first day of the retrial, the court learned that one juror had read a newspaper article about the case that appeared a few days before trial.  See May 10, 2004, Trial Transcript, Vol. I at p. 4 line 25 to p. 5, line 20.  At the end of the day, the court and counsel questioned the juror in detail.  See May 10, 2004, Trial Transcript, Vol. I at p. 143, line 2 to p. 146, line 25.  After the juror had recounted what he had read and what he recalled from the article, and had said that reading the article would not affect his decision in any way, attorney Foster on behalf of the Petitioner expressed no objection to the juror's continued service.  The State then asked for the court to consider designating the juror as an alternate, but the court took no action on the request, and the juror participated in deliberations and the verdict.
>
> There is nothing in the record indicating that attorney Foster's decision not to object to the juror's continued participation had any effect on the outcome or otherwise prejudiced the Petitioner, or that it fell below the performance that may be expected of the ordinarily fallible counsel.  Thus, Petitioner has not met his burden on this ground.

(Post-Conviction Order & J. at 12.)

As the post-conviction court noted, the record reveals that the State was most concerned

about the exposure of the juror to this article because the juror learned that this was a retrial (and

presumably could have inferred that Thun was not convicted on these charges the first time

around).  And, the trial judge did address the question of this juror with counsel prior to

instructing the jury.  It stated:  "I understand that neither party is seeking to have him released or

rotated as one of the alternates at this point.  Is that correct?"  (May 12, Trial Tr. at 146:10-13.)

The prosecutor affirmatively responded that the court was correct.  (Id. at 146:14.)

The post-conviction court's conclusion that Thun had not demonstrated any prejudice or

provided a basis for concluding that there was a defect in counsel's performance that rose to a

Sixth Amendment violation is not reproachable by this court given the limitations on 28 U.S.C. §

6

2254 review for claims of ineffective assistance adjudicated on the merits by the state courts. See Gomes v. Brady, 564 F.3d 532, 540 (1st Cir. 2009)("Given our highly deferential review of attorney conduct under Strickland and our similarly deferential review of the SJC's reasoning under AEDPA, we cannot disagree. The defense counsel's choice not to object could reasonably be viewed as a tactical decision."). It is of no small moment with regards to the prejudice prong of Strickland that Thun concedes that he is not sure what impact this might have had on the jury deliberation.

3.  Ineffective assistance of counsel for failing to properly examine the victim's sister

In his sixth ground Thun maintains that his attorney should have offensively (rather than defensively) elicited testimony from the victim's older sister, Cindy, who Thun believes could have changed the trial in his favor. He indicates that Cindy was in the house the entire time that the alleged contact took place. He states that he wanted her to testify at his first trial but she was on a cruise with the Maine Maritime Academy. She was subpoenaed for his second trial and Thun had given his lawyer a list of questions but his attorney released the witness without asking the questions. This ground Thun raised in his post-conviction petition but he says that the judge 'circumvented' it in the decision.

Thun plainly addressed this concern in the post-conviction hearing. (Post-conviction Hr'g Tr. at 37.) He explained that he wanted Cindy as a witness for the defense and she was subpoenaed but she ended up as a witness for the State. (Id.) He stressed that she was "right there the whole time." (Id. at 38.) However, Thun's attorney did not ask her whether or not she ever saw anything inappropriate and failed to establish that she was there all the time and roamed throughout the house. (Id.) Thun stressed that this would have impacted the jury especially

7

because the girls' mother testified that she was around and never saw anything inappropriate.

(Id. at 39.)

The post-conviction court addressed Thun's claim that the victim's sister should have been principally a defense witness. The court explained:

> Another argument presented at hearing by Petitioner was that he expected the victim's older sister to be called as a defense witness "but she showed up as a witness for the State." Since the State always presents evidence first, it is not clear what attorney Foster could have done to change the fact that the sister was called as a State's witness. There also was no showing that this made any difference whatever.
> Accordingly, Petitioner has failed to meet his burden on this argument also.

(Post-Conviction Order & J. at 12-13.)

The Court did not address Thun's assertion that his attorney should have conducted a better cross-examination of Cindy, although it did fully address his claim that counsel should have done a better job apropos the testimony of the victim, her mother, and the investigating detective. (Id. at 7-9.)

In his memorandum to the Maine Law Court seeking review of this disposition, Thun argued:

> Brea's older sister, Cindy, was at the second trial, and even after asking [Attorney Foster] to ask her specific questions that I had written down, he refused to cross-examine her. This was a prime witness for me that we didn't have at the first trial. Cindy was right there during all the times that Brea says I did these things. This could have been a turning point for me. Also, in our investigation, it was brought out that Cindy did not believe Brea. I wanted this in front of the jury. Our investigation by Sandra Beck had brought out that Cindy was not sure if she believed Brea. I wanted this in front of the Jury. Cindy testified that she didn't like me. I found that when Kathy and Brea were not around, Cindy and I got along just fine, we had a lot of fun together and long conversations.

(Pet. Certificate Probable Cause at 14.) I presume that the Maine Law Court, therefore, adjudicated this claim on the merits in denying Thun further review.

8

The trial transcript reveals that Thun's attorney declined to cross-examine the sister after her direct examination.  (May 10, 2004, Trial Tr. at 122.)  In the transcript of the post-conviction proceedings, there was no examination of Attorney Foster on this question by the State or the post-conviction attorney.  (See Post-Conviction Hr'g Tr. at 64-79.)   For his part, during that proceeding Thun testified as to the cross-examination of Cindy:

Q.      In what particular way do you think he could have done a better job?
A.      …Cindy was the one person who would have firsthand knowledge of any kind of problem with me and Brea.
Q.      Why do you say that?
A.      Because she was always there.
Q.      There –
A.      In the house.  Where –wherever – when – the allegation [sic] from Brea is that all of the stuff happened in her bedroom while – at the time – bedtime when I'd be putting her to bed on times that I was there, and all those times, so was Cindy.  And Cindy had free – free roam rights in and out of the room.  She came in and out of the room many, many times at these times and, you know, if she heard something we were talking about that she wanted to put in her two cents, she'd come in and talk with us or something or come in and play with Brea's guinea pig which was right in there.  I mean, she was always there.  She was right there the whole time.
Q.      So, what did –
A.      I wanted her – I wanted Phil to say, "Did you ever see anything appro--- inappropriate or – and – or also and – not just that --- and were you there, did you have free access to the room, you know, what was going on. And if she answered honestly, that's it.
Q.      But the question wasn't asked?
A.      No. Oh, no. no, ---
Q.      And if you think that question was asked and there was an honest answer, what do you think the answer would have been? [transcript sic omitted]
A.      Well, the answer would have been that there was nothing going on.  Cindy did have free access to the room.  She was there all the time, and there was no issues.
Q.      Do you think that that testimony would have impacted on your trial, your second trial?
A.      Well, I should hope so.  I mean, if a jury has – you know – there's – there is absolutely no evidence that this ever happened.  There's – there's nothing.  The only possible thing that could be a witness.  Well, here's a witness that was the only witness that was there the entire time and never saw anything, never knew anything because there's never anything happen.  Also, the mother the same way.  Kathy was around during – during bedtimes, too, but he did ask her if he knew

9

any – if she knew anything about this stuff and she did say, "No, absolutely nothing, no." You know, how can you be convicted when there's nothing – there's no evidence? I don't understand this.

(Id. at 37-39.)

The performance of Attorney Foster as to his decision not to cross-examine Cindy on this issue must be viewed in light of Cindy's testimony on direct examination. Cindy reported that when Thun first moved into the house: "He was there, but I – I didn't really get along with him, but it wasn't horrible at first." (May 12, 2004, Trial Tr. at 118.) She indicated that the relationship changed between Thun and her: "There was a lot of fighting. There was a lot of yelling and arguing and put-downs." (Id. at 119.) She elaborated: "I would tell him I wanted him to leave, that I hated him. He would – he told me I was fat one time. Just not nice things." (Id.) With respect to Cindy's behavior vis-à-vis Brea's room and the alleged good-night incidents of touching by Thun, Cindy's testimony on direct was:

> Q.      When – during that year did you often – what were the rules between you and Brea about your bedrooms? Did you go in and out freely of your bedrooms or together?
> A.      It was up to us. It was whether we were getting along at the moment or not. If we were arguing at all, you could not go into the other girl's bedroom, but it wasn't bad.
> Q.      Okay. Did Bill have a – any routine of coming up and seeing you and saying goodnight to you?
> A.      He would say goodnight usually at my door. I would say as little as possible. I didn't really want him in the room.
> Q.      Okay. And would that be every night or occasionally?
> A.      Not every night, occasionally.
> Q.      Yeah. Did he ever come into your room to say goodnight?
> A.      Once in a while he would.
> Q.      Were you aware or did you have any knowledge of Bill going in to say goodnight to Brea?
> A.      He would talk to her for quite awhile.
> Q.      Okay. And did you ever go into her room while Bill was there?
> A.      No.

10

(Id. at 120-21.)   It is important to note that because Cindy did not testify at the first trial there was no prior testimony that Attorney Foster had at his disposal with which to impeach her.  Thun suggests that his investigator had some information that Cindy did not necessarily believe Brea's version of her contact with Thun but that evidence was not presented to the state courts, see 28 U.S.C. § 2254(e)(2), and he has not submitted any such evidence in this § 2254 proceeding.  On the record before me there is no reason to believe that Attorney Foster could have successfully cross-examined Cindy so as to convey to the jury that she would necessarily have been privy to the sexual contact had there been any between Thun and Brea.

If I assume that the state courts resolved this aspect of Thun's sixth ground, it was not an unreasonable application of Strickland, see Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003), and if I assume that the state courts did not address a claim that was adequately presented to them, I conclude that there was no Strickland shortfall even if I were not constrained by the § 2254(d)(1) deference, see Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); see also Foxworth v. St. Amand, __ F.3d __, __, 2009 WL 1844313, 14 (1st Cir. Jun. 29, 2009).

4.   Ineffective assistance of counsel for circumscribing petitioner's direct testimony

Thun's seventh 28 U.S.C. § 2254 contention is that his attorney did not allow him to testify fully.  He states:  "I wanted to address each individual charge.  I could easily have shown there [were] no facts to back up any of them.  My own lawyer cut me off."  (Sec. 2254 Mem. at 16.)

It is true that there was some limitation set on Thun's testimony at his second trial.  For instance, the prosecutor objected to his narrative responses and the court sustained this objection.  However, the transcript testifies to the fact that even after such an objection Thun was given ample opportunity to narrate his version of events.  Counsel was required to consider the court's

11

limitation on narrative testimony in conducting his direct examination of his client and the court

and prosecutor demonstrated tolerance in allowing substantial -- and that is somewhat of an

understatement -- episodes of narrative testimony.

> The post-conviction court's reasoning on this score is unassailable:

> Petitioner asserts that attorney Foster failed to develop his direct testimony adequately.   The transcript of Petitioner's direct testimony at the retrial runs to 125 pages, more than twice the number of transcript pages covered by the direct testimony of all of the State witnesses combined.  Petitioner has not pointed to any particular omission by attorney Foster.
> Instead, his real concern seems to be that the judge at the retrial required a question-answer format to direct examination, whereas the trial judge at the first trial allowed Petitioner to "tell my story" through narrative responses.  Even that premise is faulty, because the transcript of his direct testimony at the retrial is replete with narrative answers running uninterrupted for as long as five transcript pages, including narrative not in response to questions.  See, e.g. May 12, 2004 Trial Transcript, Vol. II at p.78 line 5, to p. 84, line 19, p. 100, line 7 to p. 103, line 15.  Thus, the retrial manuscript makes clear that, had Petitioner wanted to speak to a particular point during his testimony, he could have, and, apparently he did, whether he was asked a question about it or not.

(Post-Conviction Order & J. at 14.)

I also note that counsel raised his concern about the trial court's approach to his client's

testimony in the hearing on his motion for a new trial.  (Nov. 3, 2004, Hr'g Tr. at 7.)  The trial

judge was obviously taken aback by the suggestion that he was somehow making evidentiary

rulings unfairly prejudicial to the defense.  The bottom line is that with regards to the key issue

of whether or not Thun's attorney performed deficiently, the record demonstrates that he

performed adequately  as an advocate for his client in pressing his cause during the second trial

including the development of his narration of events and pursued relief in the aftermath of the

jury verdict, arguing that Thun was unable to fully explain his version of his relationship with the

victim.

5. <u>Denial of his right to call expert and lay witnesses in his defense; veracity of the victim's counselor's records; denial of his right to fully cross-examine the victim because the justice conducted an *in camera* review of the victim's counselor's records; inability to fully confront the victim during cross-examination; and Thun's insufficiency of the evidence claims</u>

There are four of Thun's 28 U.S.C. § 2254 grounds that relate to his ability to fully test the veracity of the victim. Thun explains in his eighth 28 U.S.C. § 2254 claim that he had an expert witness in court but the prosecutor told the jury during opening statements that there would be no expert witnesses because she wanted them to decide the case on feeling rather than on fact. He faults the State for not having an expert witness for a case this serious. He believes that this lowers the reasonable doubt standard.[3]

Thun described his discussion with defense counsel on the prospect of calling an expert witness at the post-conviction hearing. (Post-conviction Hr'g Tr. at 27.) He thought the expert would have been able to educate the jury on some of the psychological issues involved in the case. (<u>Id.</u>) He indicated that his expert could testify that there was a problem with the victim known as 'parental alienation syndrome.' (<u>Id.</u> at 27-29.) He testified that he "absolutely" wanted this paid expert to testify at trial and he asked his attorney to accomplish this. (<u>Id.</u> at 29.)[4]

The first trial judge addressed the motion <u>in limine</u> concerning the admissibility of Thun's expert witness in a motion hearing. It appears from the transcript of the post-conviction hearing that this pre-trial hearing was never transcribed. (<u>See also</u> Am. Pet. Post-conviction Review at 2, State App. C.)

---

[3]      Thun  also notes that his attorney testified at the post-conviction hearing to a completely different strategy than he told Thun before trial.

[4]      Thun  indicated  that there was also a need for this testimony because it came out at trial that the victim was depressed and bi-polar.  (<u>Id.</u> at  30.)   I could not locate trial testimony that relates this information about the victim. It is possible that this was information that arose during sentencing.

The post-conviction court addressed Thun's expert evidence complaint with an ineffective assistance of counsel overlay.  It reasoned:

> [I]n an argument first presented at the March 4 hearing, Petitioner argues that Mr. Foster's failure to present the testimony of John Lorenz, an expert witness on parental alienation syndrome, amounted to ineffective assistance of counsel. Petitioner asserts that, had he been called, Dr. Lorenz could have "educated the jury" on the psychological dimension to the victim's accusations against Mr. Thun.
>
> Dr. Lorenz was hired for purposes of jury selection as well as to present expert testimony at trial.  His ability to present expert testimony was one of the subjects of the Defendant's Motion in Limine dated Oct. 9, 2002.  His proposed expert testimony was based on an offer of proof, and that ruling continued as the law of the case during the retrial. The transcript does not reflect that Mr. Foster again offered the testimony of Dr. Lorenz, but it was discussed, as was the court's prior ruling on admissibility.  See May 12, 2004 Trial Transcript, Vol. II at p.1, lines 11-23.
>
> There is no indication that, even had Mr. Foster tendered the Lorenz testimony, that it would have been admitted, if only because Defendant was not a parent of the victim.  Also, there is no indication that the absence of the Lorenz testimony deprived Petitioner of a substantial ground of defense or affected the outcome of the retrial.  Petitioner has thus failed to prove that Mr. Foster's failure to offer the Lorenz testimony at the retrial was ineffective assistance of counsel.

(Post-conviction Order & J. at 10.)

Thun's ninth and tenth 28 U.S.C. § 2254 claims concern the victim's counselor's records. He maintains that the counselor stated in writing that she had destroyed all her records after she made her report to the state police.  Yet, two years after the counseling took place the counselor turned in something to the trial judge (with respect to the *in camera* review).  Thun questions the reliability of the counselor's memory.  Thun also points out that the defense was not allowed access to the records and, as a consequence, the defense had to rely on the judge's opinion.  He complains also that the defense was not allowed to cross-examine the counselor at trial because of the State's objection.  As to both these grounds, Thun states that neither his appellate nor his

14

post-conviction attorney raised this issue but that he raised it when he sought review of the denial of the post-conviction petition.

The Maine Law Court addressed the brunt of this challenge in Thun's direct appeal as follows: "Contrary to Thun's contentions, because the victim's counseling records did not contain exculpatory information, the court did not abuse its discretion or commit constitutional error in refusing discovery or declining to admit the counselor's testimony.  See State v. Perry, 552 A.2d 545, 547 (Me. 1989); State v. Watson, 1999 ME 41, ¶ 7, 726 A.2d 214, 216." (Mem. Dec. at 1-2, State App. B.)  Perry addressed a due process and confrontation clause/compulsory process challenge to the restrictions on the defendant's access to police reports and the Department of Human Services records pertaining to the victim-witness.  Watson addressed a claim challenging -- on compulsory process grounds -- the quashing of a subpoena duces tecum aimed at the social worker involved in the child-victim's abuse investigation.

The denial of his right to fully cross-examine the victim and the investigating officer because the trial court sustained the prosecution's objections is Thun's thirteenth 28 U.S.C. § 2254 complaint.  He explains that each time his attorney got close to showing the State was wrong, the prosecutor would object.   If the defense had not been hindered in this manner Thun believes he could have demonstrated that no real investigation was done by the State.

At the post-conviction hearing Thun forwarded his claim that his attorney's cross-examination of the victim, Detective Strout, and the victim's mother was inadequate.  (Post-conviction H'rg Tr. at 41.)  With regards to the cross-examination of the victim and the investigating detective, the superior court reasoned:

> Nothing in the transcript reveals any particular shortcoming in Foster's cross-examination of any witness.  In fact, attorney Foster's cross-examination of the victim during the retrial covers twice as many pages of transcript as does the

15

victim's direct examination.  Attorney Foster testified that the Petitioner insisted during retrial that Mr. Foster "take her [the victim] apart" on cross-examination. In Mr. Foster's view this was a mistake, aggressive cross-examination of the victim in a case of sexual assault being always risky, in Mr. Foster's view.
….

The trial transcript indicates that attorney Foster intended to cross-examine Detective Strout on the scope of his investigation, specifically to establish that the detective failed to interview important witnesses in the course of investigation.  The State's objection to that line of inquiry was sustained, so Mr. Foster was unable to pursue such questions.

Attorney Foster conducted no cross-examination of Detective Strout on the primary topic of the detective's direct examination – his interview with the Petitioner.  The Amended Petition asserts that attorney Foster should have cross-examined the detective on the interview because the detective did not provide "the proper context" for Petitioner's admission during the interview that he may have had contact with the victim's genitals.  In fact, the transcript does indicate that the detective testified on direct that the Petitioner had told him that any such contact was inadvertent and nonsexual in nature.  See May 10, 2004 Trial Transcript, Vol. I at p. 134, lines 19-23.

Moreover, Attorney Foster explained that his decision not to cross-examine detective Strout on his interview with Petitioner was a calculated decision on his part.  Mr. Foster said Petitioner had made statements during the interview that were "not helpful," and thus elected against any cross-examination that would likely give the detective the opportunity to elaborate on his direct testimony about the Petitioner's statements during the interview.  Also, such cross-examination might have "opened the door" to admission, either directly or through the testimony of Detective Strout, of damaging portions of the interview transcript between him and Petitioner.

For these reasons, the court finds that the Petitioner's allegations of ineffective assistance of counsel by virtue of inadequate cross-examination was not borne out by the evidence.

(Post-Conviction Order & J. at 8-9.)

Thun did file a motion for reconsideration after the Law Court rejected his direct appeal.

His motion was a one paragraph assertion that the Court did not adequately consider his

confrontation clause argument.[5]  The above cited infirmities are presumably the basis for such a challenge.[6]

In <u>Ellsworth v. Warden</u>, 333 F.3d 1 (1st Cir. 2003) the First Circuit addressed, <u>en</u> <u>banc</u>, a similar confrontation clause challenge in the context of a 28 U.S.C. § 2254 petition brought by a state prisoner convicted of felony sexual assault and felony sexual abuse.  "The primary evidence at trial was the conflicting testimony of Ellsworth and [the young victim] Matthew."  <u>Id.</u> at 2. Ellsworth argued "that the trial court should have allowed him to introduce evidence that Matthew was sexually abused when he was three years old" claiming "that this evidence would have been relevant as a possible explanation for why Matthew could describe sexual acts in such detail, thus making more plausible the possibility that Matthew was fabricating his claim against Ellsworth."  <u>Id.</u> at 7.  The First Circuit concluded that Ellsworth had not presented a viable confrontation clause claim.  <u>Id.</u>  It explained:  "Courts routinely exclude evidence regarding the sexual history of an alleged victim of sexual abuse.  <u>See</u>, <u>e.g.</u>, Fed.R.Evid. 412.  These restrictions are designed to give sexual assault victims 'heightened protection against surprise, harassment, and unnecessary invasions of privacy.' <u>Michigan v. Lucas</u>, 500 U.S. 145, 150 (1991)."  <u>Id.</u>  As part of this discussion, the First Circuit noted:

> Perhaps under state law the trial judge should have admitted the episode as to what happened when Matthew was three; quite likely many judges would have admitted it. But trial judges are constantly making on-the-spot judgments as to whether evidence, although formally relevant, is too remote, likely to lead to unnecessary excursions, or partly or wholly duplicative-the range of

---

[5]     Oddly, this motion cites to Maine Law Court decisions that rejected confrontation clause challenges, <u>see</u> <u>State v. Barnes</u>, 2004 ME 105, 854 A.2d 208; <u>State v. Gorman</u>, 2004 ME 90, 854 A.2d 1164, along with <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

[6]     In a related § 2254 complaint Thun contends that he could have brought out the fact that the State interfered with Thun's investigation when it told the victim's mother not to talk to the defense and to tell Thun's attorney to stay away from the family. Thun indicates that there was a motion hearing on this issue but the mother lied and the judge ruled in favor of the prosecution.   He states that this issue was raised in his post-conviction proceeding.  (<u>See</u> <u>Pro</u> <u>se</u> Post-conviction Pet. at 5-6.)

considerations embraced in the federal courts by Rule 403's balancing test. Fed.R.Evid. 403. Close calls are common and, right or wrong, do not thereby become constitutional violations. <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678-79 (1986).

<u>Id.</u> at 8.

Perhaps of more relevance to Thun's confrontation clause claim is the following discussion:

> Ellsworth's remaining claim is that the trial court violated the confrontation clause by refusing to allow him to offer testimony from a counselor at the Pine Haven School, the facility where Matthew lived after he left Spaulding, that Matthew falsely accused boys at the school he attended after Spaulding of peeking at him in the shower and at the toilet and of stealing his toys. Here Ellsworth has a further hurdle because the state court considered the constitutional claim and rejected it, so under the statute we can only reverse if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).
>
> Quite apart from the higher standard, there is nothing unusual about limiting extrinsic evidence of lies told by a witness on other occasions; under the Federal Rules of Evidence, exclusion of such evidence is the usual rule and even cross-examination as to such lies is limited. The theory, simple enough, is that evidence about lies not directly relevant to the episode at hand could carry courts into an endless parade of distracting, time-consuming inquiries. In this instance, a lie about toy stealing or peeping at a different time and location from the alleged sexual abuse by Ellsworth is classic "collateral" evidence regularly excluded in federal criminal trials. <u>See</u> Fed. R .Evid. 608(b).

<u>Id.</u>

In Thun's twelfth § 2254 claim he maintains that the defense should have been allowed to have the victim analyzed by an independent psychologist after seeing the unprofessionalism of the State's recommended counselor.  This, Thun believes, infringed his due process rights. He faults his appellate and post-conviction attorneys for not raising this ground.  The State of Maine asserts that this ground should have been alleged in Thun's direct appeal and was not.  (Mot. Dismiss at 10.)  In his <u>pro se</u> post-conviction petition Thun mentioned, almost in passing:  "If the State had used an independent fully trained licensed psychologist who only wanted to help Brea,

rather than help the State convict an innocent man, this situation could have been worked out to Brea's advantage, years ago."  (Pro Se Post-Conviction Pet. at 12.)  I agree that Thun has not adequately presented this claim to the state courts so as to allow for 28 U.S.C. § 2254 review. See Clements, 485 F.3d at 162; Reese, 541 U.S. 27.

Thun's Fourteenth and Fifteenth contentions challenge the sufficiency of the evidence. He states that the counselor's analysis on the victim's reports of abuse demonstrated incompetency.  Thun insists that he easily proved that two of the charges against him were false and there were no facts to back up the other charges either.  He emphasizes that the victim was the only prosecution witness that knew facts pertaining to these accusations and opines that the State was wholly dependent on the victim's statements and these statements contradicted each other with the victim changing her story from one trial to the next.[7]  At the post-conviction hearing the prosecutor admitted 'coaching' of the victim had occurred.  This issue alone, Thun believes, should have been enough to win the direct appeal.

The Maine Law Court ruled on Thun's sufficiency of the evidence challenge, stating "[C]ontrary to Thun's contention, sufficient evidence, both direct and circumstantial, exists in the record to support his conviction.  State v. Turner, 2001 ME 44, ¶6, 766 A.2d 1025, 1027; State v. Murray, 559 A.2d 361, 362 (Me. 1989)."  (Mem. Dec. at 1-2, State App. B.)[8]

---

[7]        Thun also complains that the victim brought up new allegations against him right before sentencing with respect to which Thun had proof were lies but he was not permitted to speak.  Thun's § 2254 grounds do not pertain to sentencing.

[8]        With regards to 28 U.S.C. § 2254 insufficiency of the evidence claims, the First Circuit recently explained:
        Sufficiency claims are generally evaluated under § 2254(d)(1) and we look to "whether the state court decision constitutes an unreasonable application of clearly established Supreme Court case law." Hurtado v. Tucker, 245 F.3d 7, 15 (1st Cir.2001) (quoting Williams v. Matesanz, 230 F.3d 421, 426 (1st Cir.2000)). . .
        Further, in our inquiry of objective unreasonableness the question "is not how well reasoned the state court decision is, but whether the outcome is reasonable." Hurtado, 245 F.3d at 20. We note that just because an opinion is poorly reasoned does not "mean that the outcome represents an unreasonable application, although ... it is certainly ground for further inquiry if the

I have reviewed the transcripts of Thun's two-day second trial in their entirety.  The trial boiled down to a contest between the victim's testimony and Thun's testimony.  It was a quintessential credibility dual.  The Maine Law Court's decision as to the sufficiency of the evidence -- although summary -- was not "unreasonable in the independent and objective judgment of" this court.

That said, I have not taken Thun's challenge to his ability to adequately test the testimony of the victim and the State's collaborative evidence lightly.  The fact that this was a re-trial after a hung jury emphasizes that the State's case was by no means a slam dunk.  To this day Thun maintains his innocence on a theory that the victim fabricated her testimony after interventions by her mother, her counselor, and the State.  After reading the transcripts of the second trial and the hearing on the motion for a new trial that followed (Nov. 3, 2004, Hr'g Tr.), one could imagine a scenario in which Thun could have been acquitted of some or all of the counts on which he was found guilty.  However, it is clear that the stridency with which Thun insists that he was unable or his attorney failed to fully test the State's case is not sufficient, in and of itself, to carry his 28 U.S.C. § 2254 burden.

6.  <u>Ineffective assistance of counsel for failing to move for a specific judgment of acquittal on Count 4</u>

The eleventh claim brought by Thun in this 28 U.S.C. § 2254 proceeding is that his attorney should have moved for acquittal on Count 4 (alleged contact on April 15, 1995).  Thun's

---

state court ignores material facts." <u>Id.</u> (internal citation omitted). " 'It is not necessary that the federal court agree with every last detail of the state court's analysis. By like token, state courts are not required to supply the specific reasons that a federal court thinks are most persuasive for upholding the judgment.' " <u>Healy [v. Spencer]</u>, 453 F.3d [21,] 28-29 (1st Cir.2006) (quoting <u>Bui v. DiPaolo</u>, 170 F.3d 232, 243 (1st Cir.1999)).

    As a final note, we emphasize the great degree of deference state court judgments are due, especially those that uphold jury verdicts.

<u>O'Laughlin</u>, 568 F.3d at 298-300. (footnotes omitted).

reasoning is that both Count 4, like Count 8 (alleged contact on August 15, 1995), specified

penetration.  As to Count 8 he was acquitted because he proved that the victim was in North

Carolina all summer. Thun complains that his attorney failed to properly argue for acquittal on

Count 4 even though there was no evidence to support conviction on this count and a jury cannot

find guilt without sufficient evidence.

The post-conviction court identified this ground as one of the grounds before it.  (Post-

conviction Hr'g Tr. at 7-8.)  In its order it explained:

> The Amended Petition argues that Mr. Foster's failure to argue for
> judgment of acquittal on Count 4, a charge of unlawful sexual contact with
> penetration, was ineffective assistance of counsel, because had the argument been
> made, the lack of evidence of penetration would have compelled a grant of the
> motion.
> The transcript of the retrial does indicate that Mr. Foster made a motion
> for judgment of acquittal, *see* M. R. Crim. P. 29(a), albeit in a somewhat
> perfunctory manner, after the State rested.  See May 10, 2004 Trial Transcript,
> Vol. I at p. 141, line 5.  After the verdict, Mr. Foster also filed a motion for a new
> trial based in part on the insufficiency of the evidence.  The same issue was raised
> on appeal, and rejected by the Law Court in its memorandum decision.
> The issue was plainly preserved.  If Petitioner's argument is that Mr.
> Foster should have made the argument more vigorously and in more detail, there
> is nothing to suggest that, in that event, the trial court would have (or should
> have) granted the motion.  The victim did testify that Petitioner touched her "on
> the inside". See May 10, 2004 Trial Transcript, Vol. I at p. 67, lines 7-18.  Thus,
> the record does not support this aspect of Petitioner's argument of ineffective
> assistance of counsel.

(Post-conviction Order & J. at 9-10.)

What Thun does not seem to appreciate is that his own articulation of the reason he was

acquitted on Count 8 supports the jury's verdict on Count 4 because there was no dispute that the

victim <u>was</u> in the Ellsworth household with Thun during that period, in contrast to the date

alleged vis-à-vis Count 8 and Count 7 (alleging contact on July 15, 1995), the counts on which

he was acquitted.  There is no <u>Strickland</u> infirmity here.

7.   Denial of state law right to allow the defense to independently audiotape the retrial

Thun states in his sixteenth 28 U.S.C. § 2254 claim that he found out after his first trial that the transcripts of that proceeding were not complete and so there was a motions hearing to have the second trial audio-taped by the defense and the judge denied that motion.[9]  When his attorney asked for tapes of other hearings for use in the direct appeal, the court reporter indicated that she had taped over those hearings. He cites as the bases for this claim a denial of his 1 M.R.S. § 404 rights.  This is purely a state law claim that is not cognizable in a federal habeas proceeding.[10]

8.   Ineffective assistance of counsel for failing to move to dismiss the indictment against him based on double jeopardy after the first jury could not agree on a verdict

Ground seventeen is an effort by Thun to convince this Court that he was placed in double jeopardy and his attorney was ineffective for not insisting that the first trial be deemed a mistrial.  He believes that this gave the State a big advantage in the second trial because it allowed the prosecution to coach the witnesses.  Thun simply did not raise this ineffective assistance claim in his post-conviction proceeding and it is not exhausted.  See 28 U.S.C. § 2254(b)(1)(A); see, Clement, 485 F.3d at 162.

9.   Ineffective assistance of counsel for failing to move to order the witnesses not to review the transcripts of the first trial before the retrial

---

[9]      Thun points to the omission of the opening and closing statements from the official transcripts, as well as his contention that the court reporter at both trials failed to record all of the testimonial interactions.

[10]      I further note, during his post-conviction proceeding Thun presented an ineffective assistance claim apropos the inability to audiotape the second trial which the post-conviction court easily rejected, noting that his attorney had filed a motion.  (Post-conviction Order & J. at 13.) Thun did testify about the denial of the audio tape and indicated that he did not know if counsel could have made a better argument on this score.  (Post-conviction H'rg Tr. at 39-40.)  He has not presented this as an ineffective assistance claim in this § 2254 proceeding, but had he done so, there is no suggestion on this record that counsel could have effectively undertaken any additional measures to obtain an independent audiotape or that such an audiotape would have changed the outcome of the proceedings.

22

The eighteenth 28 U.S.C. § 2254 claim in Thun's petition is an argument that his counsel performed inadequately when he did not sequester the transcripts of the first trial toward preventing the prosecution from coaching the witnesses for the second trial.  This issue was clearly presented to the post-conviction court and the State stipulated that they had provided witnesses with some transcripts for the first trial as part of trial preparation.  (Post-conviction Hr'g Tr. at 3-6.)  The specific concern was the victim's access to the transcripts of her prior testimony and Thun's prior testimony.  (Id. at 11.)  He also raised this concern about Kathy Cope's (the victim's mother and Thun's former domestic partner) review of prior testimony which was alleged to lead her to change her testimony at the second trial.  (Id.)  (See also id. at 21-25.)

> The Maine Law Court addressed Thun's claims on direct appeal as follows:

> Furthermore, because no formal sequestration order was in place during or following the trial, and Thun failed to demonstrate prejudice, the court did not commit obvious error when it allowed witnesses for the State, who prepared for trial by reading Thun's previous testimony, to testify. See State v. Cloutier, 302 A.2d 84, 90 (Me. 1973) State v. Bennett, 416 A.2d 720, 726-27 (Me. 1980); State v. Eastman, 1997 ME 39, ¶ 14, 691 A.2d 179, 184.

(Mem. Dec. at 1-2, State App. B) (emphasis added).

> The post-conviction court addressed the ineffective assistance aspect of this concern.  It reasoned:

> Petitioner's first specific allegation of ineffective assistance of counsel is that Attorney Foster failed to take steps to prevent key State witnesses – the young woman alleged to have been the victim of Defendant's unlawful sexual contact and her mother, who was the Petitioner's former domestic partner – from reviewing transcripts of their and Petitioner's testimony from the first trial in preparation for testifying at the second trial.  He claims the victim's review of her prior testimony operated to his prejudice because she was able to describe sexual contact between her and Petitioner in much more specific and graphic terms than she had done at the first trial.  Petitioner does not point to specific prejudice associated with the mother's review of her own testimony before trial.

23

At the March 4 hearing, Attorney Kellett confirmed that her office did provide the alleged victim and her mother with transcripts of their previous testimony and the testimony of the Defendant for their review within a week or two before the retrial.  She also represented, without contradiction by Petitioner, that although the record reflects no formal order of sequestration during the May 2004 retrial, the State's witnesses were in fact sequestered from hearing each other's testimony.

The Record is silent as to precisely when the victim and her mother reviewed the transcripts from the prior trial.  The mother and the victim were the first and second witnesses for the State on the first day of the retrial, so their review would have had to occur either before the commencement of the retrial, or during opening statements or, in the victim's case, while her mother was testifying or over the lunch hour. ....

Petitioner alleges that after the first trial, attorney Foster should have requested sequestration of witnesses, presumably under M. R. Evid. 615, to prevent the victim and her mother from reviewing the transcripts of their former testimony between the first trial and the retrial, and that his failure to do that or take other steps to prevent the transcript review constituted ineffective assistance of counsel.

There is clear authority that a witness's review of another witness's testimony at a prior trial while a sequestration order is in effect may well violate the order.  See Jiminez v. United States, 780 F.2d 975, 980 n.7 (11th Cir. 1986) ("there is no difference between reading and hearing testimony for purposes of Rule 615).  It is not at [all] clear, at least in Maine, that Rule 615 authorized such sequestration orders *between* trials.

So even had attorney Foster, at the end of the first trial, requested a sequestration order precluding review of prior testimony to be in effect until a retrial, it is not clear such a request would have been granted.  Given that the victim and her mother apparently had already reviewed their and the Defendant's prior testimony by the beginning of the retrial, a timely request for sequestration by attorney Foster at the beginning of the retrial likely would not have prevented the review.

For four reasons, the court concludes that Petitioner has not shown that attorney Foster's failure to take steps to prevent the two witnesses from reviewing prior  testimony between the two trials constitutes ineffective assistance of counsel.

First, an attorney's failure to make a sequestration request covering the period between trials does not amount to "serious incompetenc[e], inefficiency, or inattention of counsel amounting to performance … below what might be expected  from an ordinary fallible attorney," for purposes of the first state of the ineffective assistance analysis. Second, because the witnesses' review appears to have occurred after the end of the first trial and before the beginning of the second, it is not clear that a more typical request for sequestration during either trial would have succeeded in preventing the review.

24

Third, Mr. Foster did cross-examine each of the witnesses regarding materials reviewed in preparation to testify, and elicited an admission from each that she had reviewed her own and Petitioner's prior testimony. See May 10, 2004 Trial Transcript, Vol. I at p. 54, lines 10-18; *id.* p. 91, lines 13-25.

Fourth, Petitioner has failed to demonstrate that Mr. Foster's failure to request sequestration during either trial or between the trials deprived Petitioner of an "['][otherwise available substantial ground of defense' or 'likely affected the outcome of the [proceeding]'" for purposes of the second state of the analysis. And effort to trace the inevitable differences in the victim's testimony between the first and second trials to her review of her own or the Petitioner's prior testimony, and to link any such differences to outcomes in the two trials, is an exercise in speculation, and cannot support an affirmative finding in Petitioner's favor.

The Law Court's memorandum of decision denying Petitioner's appeal notes, not only that the issue was not preserved for appellate review because there was no formal sequestration order in effect, but also that the Petitioner failed to show prejudice resulting from the witnesses' review of the Petitioner's prior testimony. Thus, even had the issue been preserved for appellate review, it likely would not have changed the outcome of his direct appeal. At the post-conviction hearing, he again failed to demonstrate prejudice, i.e. that the sequestration order he claim should have been requested deprived him of a substantial ground of defense or likely affected the outcome of the retrial.

(Post-conviction Order & J. at 4-7.)

The Maine Law Court concluded that Thun did not adequately establish any prejudice to his case vis-à-vis the review of the transcripts. And, the post-conviction court's rebuff of Thun's Strickland claim concerning counsel's performance and the want of tangible prejudice apropos the review of the transcript was not unreasonable within the meaning of § 2254(d). See Gomes, 564 F.3d at 540.

   10. The Maine Law Court improperly failed to overturn his failure to appear conviction

Number nineteen of Thun's federal habeas petition attacks the Maine Law Court's denial of an appeal of his conviction for failing to appear. That conviction and the Maine Law Court treatment of his appeal has already been addressed by this court in an earlier 28 U.S.C. § 2254 proceeding. Thun v. Maine Correctional Center, Civ. No.07-139-P-S, 2007W L 2827371, 2 -3

25

(D.Me. Sept. 13, 2007) (recommended decision), adopted , 2007 W L 2827371 (Sept. 24, 2007).[11]

11. Ineffective assistance of post-conviction review counsel

Thun also attempts to seek relief from this court on the theory that his counsel for his post-conviction proceedings was inadequately prepared.  However, this twentieth complaint fails because:  "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).

12. Failure of judges to follow the U.S. Constitution, treaties, and laws; failure of the Maine Law Court to allow him to proceed with discretionary post-conviction appeal; denial of his First Amendment right to petition the government for redress of grievances; and allegation pertaining to right of federal courts to review state court decisions

The twenty-first attempt by Thun in obtaining federal habeas relief is a full frontal assault on the judges who have handled his case since its inception.  He cites the United States Constitution, the Universal Declaration of Human Rights, and the Maine Constitution.  It is Thun's hope that the federal court will force the State of Maine judges to uphold his rights.  Ground twenty-two of Thun's 28 U.S.C § 2254 petition relates that his post-conviction attorney told him that there were no grounds to appeal the denial of post-conviction relief and he was allowed to present his claims pro se.  He laments:  "After writing to them, describing all the things that have gone wrong, and asking them for a chance to speak to them in person, they sent me a one page letter which had one pertinent sentence that said, 'Motion Denied.'"  (Sec. 2254 Pet. at 41.)  In his twenty-third claim Thun states simply: "I have a right to bring this matter to the Government for redress.  US Constitution Amendment 1."  (Id. at 43.)  And, as for his

---

[11]         Thun represents that he brings this up again in this proceeding because if he had received a fair trial on these charges he would not have been convicted and he would not have fled to Canada and, thus, he would not have been charged with failing to appear.

twenty-fourth ground, Thun maintains: "The Federal Court has the Right to review State Court decisions.  U.S. Constitution Article 3."

The State of Maine asserts that these grounds should have been alleged in Thun's direct appeal and were not.  (Mot. Dismiss at 10.)  True enough.  See § 2254(b)(1)(A); Clements, 485 F.3d at 162;  Reese, 541 U.S. 27.  Even if Thun had exhausted these claims they are frivolous attacks; the state court record attests to the process that Thun was given as a criminal defendant, the careful attention that the trial and post-conviction courts gave to his defense and his claims, and the availability of review by the Maine Law Court.  With respect to the power of this court to review the decisions made by the state courts in a § 2254 proceeding the United States Congress and the United States Supreme Court have provided clear guidance on the reach of such review and I have followed these directives in addressing Thun's other federal habeas challenges.

13. <u>Denial of his right to be free from cruel and unusual punishment because he has to register as a sex offender and because he has to participate in sex offender counseling</u>

Finally, Thun challenges the State's registration requirements for sex offenders and state-required counseling contending that the requirements amount to cruel and unusual punishment under the Eight Amendment.  He insists that having his name on an international web-site as a sex offender places him in "danger that no other felony brings."  (Sec. 2254 Pet. at 46.)  He asserts that there have been vigilante killings of people on the registry in Maine and the listing induces negative opinions and prejudice on the part of employers and other people in the community. With respect to counseling, he indicates that the state mandates it but it is at Thun's own expense and all for something he has not done.

Thun raised a concern about his sex-offender-registration onus and his state-ordered counseling in his <u>pro se</u> petition for post-conviction review.  (Pro se Pet. Post-Conviction Review

27

at 12, 14-15, State App. C.)  He also raised it perfunctorily in his lengthy memorandum seeking the Law Court's review of the denial of post-conviction relief.  (Pet. Certificate Probable Cause at 21.)   The State of Maine asserts that these grounds should have been alleged in Thun's direct appeal and were not properly exhausted.  (Mot. Dismiss at 10.)

As this Court can deny § 2254 relief on an unexhausted claim, <u>see</u> 28 U.S.C. § 2254(b)(2), I reach the merits of this contention and conclude that Thun has no viable Eighth Amendment challenge to his registration and counseling requirements.  <u>See</u> <u>Cutshall v. Sundquist</u>, 193 F.3d 466, 477 (6th Cir. 1999) ("We have already concluded that the Act does not impose punishment; it is regulatory in nature. Therefore, it does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.");  <u>Johnson v. Terhune</u>, No. 05-15673, 2006 WL 1642702, 1 (9th Cir. June 9, 2006) ("Requiring appellant to register as a sex offender did not violate the Ex Post Facto Clause, Double Jeopardy Clause or Cruel and Unusual Punishment Clause because sex offender registration is not punishment.  <u>See</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 368-69 (1997); <u>Hatton v. Bonner</u>, 356 F.3d 955, 967 (9th Cir.2004).");  <u>Syphers v. United States</u>, Civil No. 07-cv-155-JD, 2007 WL 3101396, 4 (D.N.H Oct. 19, 2007);  <u>see</u> <u>cf.</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 363-69 (1997);  <u>Doe v. Pataki</u>,  120 F.3d 1263, 1285 (2d Cir. 1997).

### *Conclusion*

I recommend that the Court deny Thun 28 U.S.C. § 2254 relief for the reasons above. I further recommend that a certificate of appealability should not issue in the event Thun files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### <u>NOTICE</u>

28

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 28, 2009